1
2
3
4
5              IN THE UNITED STATES DISTRICT COURT

6              FOR THE NORTHERN DISTRICT OF CALIFORNIA

7
8    TADD ONOMOWALE SCOTT,                    No. C -13-04321(EDL)

9             Plaintiff,                      **ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
10   v.                                       MOTION TO DISMISS**

11   SAN FRANCISCO UNIFIED SCHOOL
     DISTRICT,
12
              Defendant.
13   _____/

14
        Defendants San Francisco United School District ("the District") and Eric Guthertz moved to

15   dismiss Plaintiff's complaint.  (Dkt. 6.)  For the reasons set forth below, the Court grants in part and

16   denies in part Defendants' motion.  The Court dismisses Plaintiff's 42 U.S.C. § 1981 claims against

17   the District and Guthertz in his official capacity with prejudice.  The Court also dismisses Plaintiff's

18   military discrimination claim under California Military & Veteran's Code § 394 against Defendants

19   with prejudice.  The Court dismisses Plaintiff's § 1981 discrimination claim against Guthertz in his

20   individual capacity without prejudice, but the Court declines to dismiss Plaintiff's § 1981 retaliation

21   claim against Guthertz in his individual capacity.  The Court orders Plaintiff to file an amended

22   complaint no later than January 3, 2014.  The Court will hold a further case management conference

23   on February 4, 2014, and orders the parties to submit a join case management statement by January

24   28, 2014.

25   **I.    Background**

26        A.    <u>Plaintiff's Allegations</u>

27        Plaintiff Tadd Onomowale Scott is a black male English teacher at Mission High School in

28   San Francisco.  The District is a public school district.  Defendant Guthertz is a principal at Mission

     High School.

From 1984-1987, Plaintiff served in the U.S. Army.  After being honorably discharged, he served in the inactive reserve for five years.  Plaintiff continues to perform volunteer services for various branches of the military, is an avid supporter of ROTC activities at high schools, and has contemplated serving in the California National Guard.  The District hired Plaintiff as an English teacher with probationary status at Mission High School in August 2008.  During his two-year probationary period, an assistant principal supervised by Guthertz gave Plaintiff outstanding review, and Guthertz gave Plaintiff a highly satisfactory review.  Plaintiff attained tenured status as an English teacher in the 2010-2011 school year.  Plaintiff has applied to be promoted to an administrator position within the District but has yet to be promoted.  He also founded the Mission High Guitar Club "outside of work," which, until 2012, held after-school music workshops at Mission High School and Dolores Park Church.  (Complaint ("Compl.") ¶ 9.)

In July 2011, Plaintiff participated in and financially supported the Untied States Marine Corps Educators' workshop at Camp Pendleton in San Diego.  During the 2011-2012 school year, Plaintiff helped a Marine Corp Sergeant answer students' questions about careers in the Marines.  When Guthertz learned that Plaintiff spoke with students about the Marines, he "called Scott into his office and angrily told Scott that it was not his place to talk with students about the military and admonished him to stop doing so."  (Compl. ¶ 15.)  Plaintiff explained that the ROTC instructor referred students to Plaintiff if they had any direct questions about the Marines due to his training at Camp Pendleton.  Guthertz, who had "openly expressed anti-military sentiments at work," responded that it was a violation of board policy for a teacher to speak with students about military service.  (Id.)  "[U]nder an apprehension that he would be fired if he did not do as Guthertz directed, [Plaintiff] immediately stopped answering student questions" about the Marines.  (Id.)  Moreover, deeming Guthertz's "strong admonishment about his Marine Corp. activities" a "threat to his employment," Plaintiff was "discouraged from engaging in voluntary military service and activities and has put his intent to join the California National Guard on hold."  (Id.)

During the 2011-2012 school year Plaintiff supported another black teacher who complained that his poor performance reviews were based on racial discrimination and retaliation by Guthertz.  Plaintiff advised the employee to file a discrimination complaint with the union and referred him to

**United States District Court**
For the Northern District of California

1   equal employment office agencies.  Guthertz knew that Plaintiff assisted the employee.  According

2   to Plaintiff, since his conversation with Guthertz about military activities and his support of his

3   fellow teacher's complaints, Guthertz has treated Plaintiff with hostility.

4        Plaintiff's further alleges that other discriminatory and retaliatory actions were taken against

5   him from 2011 to 2013.  In September 2011, Guthertz assigned an individual with no teaching

6   experience to observe Plaintiff in the classroom on two occasions.  This individual issued a report

7   stating that Plaintiff did not meet teacher standards and rated Plaintiff as "needs improvement."  (Id.

8   ¶ 18.)  Plaintiff notes that although he received highly satisfactory evaluations from 2008 to 2011,

9   "after he engaged in protective activities, he received a 'needs improvement' evaluation."  (Id.)

10  Plaintiff filed grievances with the union about his evaluation and was warned that there might be

11  retaliation.  The union did not act on his grievances.

12       In March 2012, Guthertz yelled at Scott for leaving the high school campus during the school

13  day.  Scott, considering the conduct threatening, explained that he was using his "free" conference

14  period to change clothes at his home, which was across the street from the high school.  (Id. ¶ 20.)

15  Guthertz stated that he was "just checking" and "angrily and rapidly walked away."  (Id.)  A few

16  weeks later, a student returned to Plaintiff's class from Guthertz's office and announced to the whole

17  class that Plaintiff was going to be fired.  Plaintiff was humiliated and "felt it both incredulous and

18  extremely disrespectful that Guthertz would relay his intentions to a student," but the union did

19  nothing when Plaintiff reported the situation.  (Id. ¶ 21.)  Moreover, in April 2012, Guthertz falsely

20  accused Plaintiff of participating in a "mandatory reporting failure" in which Plaintiff was not

21  involved, which caused Plaintiff great emotional distress.  (Id. ¶ 22.)

22       Because neither the District nor the union took any action on Plaintiff's complaints about

23  Guthertz "and the adverse actions to which Scott was being subjected," Plaintiff filed a

24  discrimination and retaliation complaint against Guthertz and the District with the Department of

25  Fair Employment and Housing ("DFEH") in August 2012.  (Id. ¶ 24.)  The DFEH transmitted copies

26  of the complaint to Guthertz and others at Mission High.

27       Later in August 2012, Guthertz placed Plaintiff in the Peer Assistance and Review ("PAR")

28  Program, a remediation program that is "a performance review program targeting teachers for

termination," and assigned a coach to observe Plaintiff in the classroom.  (Id. ¶ 25.)  In September

2012, the coach ran her hand down Plaintiff's spine as she exited the classroom in full view of

students.  Plaintiff reported the incident to Guthertz and assistant principal Laura Parker and

complained of sexual harassment.  Guthertz, Parker, and the District did not do anything about

Plaintiff's complaint and continued to assign the coach to observe Plaintiff.  In October 2012,

Guthertz dismissed Scott from the PAR program and "assigned Mission High administrators whom

he supervised as evaluators," who gave Plaintiff unsatisfactory performance reviews every two

months without clearly explaining why.  (Id. ¶ 26.)

In the spring of 2012, Guthertz prohibited Plaintiff from operating the guitar club as an after-

school program at Mission High.  As a result, Plaintiff "was forced to conduct the club at the local

Dolores Park Church, thereby losing a number of Mission High School students who participated in

the club at the school because it was convenient."  (Id. ¶ 27.)  Meanwhile, Plaintiff's issues with

performance reviews continued.  In January 2013, Plaintiff was assigned another coach who

reported to assistant principal Parker and was indirectly supervised by Guthertz.  This coach quit the

assignment because she was "very uncomfortable with the energy and tension that her boss, Parker,

displayed toward" Plaintiff.  (Id. ¶ 28.)  In April 2013, Parker evaluated Plaintiff and ranked him as

"needs improvement."   (Id. at ¶ 29)  Plaintiff believed that this evaluation, like others, was

discriminatory and retaliatory.

On August 9, 2013, Guthertz placed Plaintiff back into the PAR Program under an

accelerated evaluation plan for the 2013-14 school year, "claiming his performance was substandard

and warn[ing] him that he could be terminated."  (Id. ¶ 30.)  Also in August 2013, union

representative Derrlyn Tom informed the staff at Mission High "that people of color were receiving

a disproportionately high number of negative performance reviews under Guthertz's administration.

(Id. ¶ 31.)  Tom and PAR coach Nathan Draper observed Plaintiff teaching, and Tom heard Draper

say good things about the observation.  Later, Draper disrupted Plaintiff's classroom by coming in

and taking pictures, causing the students to ask questions.  Also that month, Draper informed Scott

that he and a supervisor were going to observe him and that a decision on his employment suitability

would be rendered in October 2013.  According to Plaintiff, the PAR evaluation usually has four

4

phases and lasts for an entire school year, but Guthertz placed Plaintiff on an accelerated PAR Program that omitted some of the phases.  Guthertz did not place similarly situation teachers in an accelerated PAR Program, and Plaintiff believed that the PAR evaluation was a pretext for Plaintiff's planned termination.  Plaintiff alleges that similarly situated teachers not of color, who have not served in or supported military activities or associations, and who have not engaged in protective activities, have been treated dissimilarly by the District and Guthertz.

     B.   <u>Procedural History</u>

Plaintiff filed a complaint against the District and Guthertz on September 18, 2012, alleging race discrimination in violation of 42 U.S.C. § 1981, retaliation in violation of § 1981, and military discrimination in violation of the California Military and Veteran's Code § 394.  Defendants moved to dismiss the complaint under Rule 12(b)(6).   The Court held a hearing on November 19, 2013.

**II.**    **Discussion**

     A.   <u>Legal Standard</u>

A complaint will survive a motion to dismiss if it contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Dismissal under Rule 12(b)(6) may be based on the lack of a cognizable leal theory or on the absence of sufficient facts alleged under a cognizable theory.  <u>Johnson v. Riverside Healthcare Sys.</u>, 534 F.3d 1116, 1121 (9th Cir. 2008).  The reviewing court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  <u>Lazy Y Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 588 (9th Cir. 2008).

A court need not, however, accept as true the complaint's "legal conclusions."  <u>Iqbal</u>, 556 U.S. at 678.  Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss.  <u>Fields v. Legacy Health Sys.</u>, 413 F.3d 943, 950 n.5 (9th Cir. 2005).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  <u>Iqbal</u>, 556 U.S. at 679.  Thus, a reviewing court may begin "by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  <u>Id.</u>

Courts must then determine whether the factual allegations in the complaint "plausibly give

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   rise to an entitlement of relief." <u>Id.</u>  Though the plausibility inquiry "is not akin to a probability

2   requirement," a complaint will not survive a motion to dismiss if its factual allegations "do not

3   permit the court to infer more than the mere possibility of misconduct." <u>Id.</u> at 678 (internal

4   quotation marks omitted).  That is to say, plaintiffs must "nudge[] their claims across the line from

5   conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570.

6          On a motion to dismiss, a court's analysis is generally limited to the contents of the

7   complaint.  <u>Dichter-Mad Family Partners, LLP v. United States</u>, 709 F.3d 749, 762 (9th Cir. 2013.)

8   A court may also consider, however, documents not physically attached to the complaint if the

9   documents' authenticity are not questioned and the complaint necessarily relies on them.  <u>Toneman</u>

10  <u>v. Untied States Bank</u>, 2013 U.S. Dist. LEXIS 98996, at *4-*5 (C.D. Cal. June 14, 2013).  "A court

11  may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the

12  document; (2) the document is central to the plaintiff's claim; and (3) no party questions the

13  authenticity of the copy attached to the 12(b)(6) motion." <u>Marder v. Lopez</u>, 450 F.3d 445, 449 (9th

14  Cir. 2006).  A court may also consider matters that are judicially noticeable under Federal Rule of

15  Evidence 201.  <u>Toneman</u>, 2013 U.S. Dist.  LEXIS at *6; <u>see also</u> <u>Tellabs v. Makor Issues & Rights,</u>

16  <u>Ltd.</u>, 551 U.S. 308, 310 (2007) (noting that when ruling on Rule 12(b)(6) motions courts "ordinarily

17  examine" documents incorporated by reference and matters of which a court may take judicial

18  notice).

19         B.        <u>Section 1981 Claims against the District and Guthertz in His Official Capacity</u>

20         Defendants argue that because the District is a state agency, it is not a proper defendant

21  under 42 U.S.C. § 1981, and also that the District is immune from suit under the Eleventh

22  Amendment.  Plaintiff counters that the District is not a state agency but rather a municipal entity

23  that may be sued under § 1981, <u>Fed. of African Am. Contractors v. City of Oakland,</u> 96 F.3d 1204,

24  1205 (9th Cir. 1996), and that it is not immune from suit.

25         Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall

26  have the same right in every State and Territory to make and enforce contracts, to sue, be parties,

27  give evidence, and to the full and equal benefit of all laws and proceedings for the security of

28  persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains,

United States District Court
For the Northern District of California

1   penalties, taxes, licenses, and exactions of every kind, and to no other."  Section "1981 does not

2   contain a cause of action against states."   Pittman v. Oregon, 509 F.3d 1065, 1074 (9th Cir. 2007).

3   In Pittman, the plaintiff, an African-American woman, sued the State of Oregon Employment

4   Department and the Director of the Department for racial discrimination under § 1981.  Id. at 1067-

5   68.  The district court held that the State of Oregon waived its Eleventh Amendment immunity by

6   removing the case to federal court, but dismissed the § 1981 claim because the statute does not

7   permit actions against the state.  Id. at 1067.  The Ninth Circuit affirmed, holding that although §

8   1981 contains a right of action against municipalities under Fed. of African Am. Contractors, 96

9   F.3d 1204 (9th Cir. 1996), it does not contain a cause of action against states.  Pittman, 509 F.3d at

10  1074.   Additionally, the Court noted that states and their agencies are immune from suit under §

11  1981 under the Eleventh Amendment.  Id.  at 1071 ( "[S]tates enjoy sovereign immunity under §

12  1981 in the absence of waiver." (citing Mitchell v. Los Angeles Community College Dist., 861 F.2d

13  198, 201 (9th Cir. 1988)).

14          Whether an entity is a state agency depends on a number of factors: (1) "whether a money

15  judgment would be satisfied out of state funds;" (2) "whether the entity performs central

16  governmental functions;" (3) "whether the entity may sue or be sued;" (4) "whether the entity has

17  the power to take property in its own name or only the name of the state;" and (5) "the corporate

18  status of the entity."  Mitchell v. Los Angeles Community College Dist., 861 F.2d 198, 201 (9th Cir.

19  1988) (assessing whether entity was a state agency for Eleventh Amendment purposes). "To

20  determine these factors, the court looks to the way state law treats the entity."  Id.

21          The Ninth Circuit has held that California public school districts like the District are state

22  agencies.  Belanger v. Madera Unified School Dist., 963 F.2d 248, 251 (9th Cir. 1992) (the

23  California public school district at issue was a state agency for Eleventh Amendment purposes).

24  The Belanger court reasoned that the first and "most important factor" supported this conclusion

25  because a money judgment against the school district would be satisfied out of state funds.  Id.

26  ("Unlike most states, California school districts have budgets that are controlled and funded by the

27  state government rather than the local districts.").  It also noted that under California law, the school

28  district was a state agency that performed central government functions.  Id. at 251, 253

("California public schools have long been treated as state agencies under California law."); <u>see also</u> <u>T.M. v. San Francisco United Sch. Dist.</u>, Case No. 09-1463 CW, 2009 U.S. Dist. LEXIS 78357, at *11-*12 (N.D. Cal. Sept. 1, 2009) (finding that the District was immune from 42 U.S.C. § 1983 claims under the Eleventh Amendment); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 982 F. Supp. 1396, 1403 (N.D. Cal. 1997) (finding that the District was immune from suit under § 1981 because it was a state agency for Eleventh Amendment purposes).

Plaintiff cannot state a § 1981 claim against the District, and the District is also entitled to Eleventh Amendment immunity from Plaintiff's § 1981 claims. Further, Plaintiff's § 1981 claims fail against Guthertz, insofar as Plaintiff is suing Guthertz in his official capacity. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989). The Court therefore dismisses Plaintiff's § 1981 claims against the District and Guthertz in his official capacity with prejudice.

C.    <u>Section 1981 Claims against Guthertz Individually</u>

1.    Discrimination

Defendants argue that the Court should dismiss Plaintiff's § 1981 discrimination claim insofar as it is against Guthertz individually because Plaintiff has not alleged that Guthertz's actions were motivated by Plaintiff's race or that Guthertz personally participated in adverse employment actions against Plaintiff. Plaintiff counters that Defendants "confus[e] the burden of proving the Section 1981 discrimination and retaliation claims with pleading the claims." (Pl's Opp. at 6.)

To state a claim for disparate treatment discrimination, a plaintiff must allege that: "(1) she belongs to a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) her employer treated her differently than a similarly situated employee who does not belong to the same protected class." <u>Peoples v. Cnty. of Contra Costa</u>, Case No. 07-00051 MHP, 2008 U.S. Dist. LEXIS 112263, at *22 (N.D. Cal. May 28, 2008). An adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment." <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1089 (9th Cir. 2008). Adverse employment actions include termination, dissemination of a negative employment

United States District Court
For the Northern District of California

reference, issuance of an undeserved negative performance review, and the refusal to consider for promotion. <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 928 (9th Cir. 2000).  To state a § 1981 claim against an individual, a plaintiff must allege that the individual was personally involved in the violation. <u>Atwal v. Lawrence Livermore Nat'l Sec., LLC</u>, Case No. 11–3030 MMC, 2012 U.S. Dist. LEXIS 19772, at *8 (N.D. Cal.  Feb. 16, 2012 (citing <u>Whidbee v. Garzarelli Food Specialties, Inc.</u>, 223 F.3d 62, 75 (2d Cir. 2000) ("A claim seeking personal liability under section 1981 must be predicated on the actor's personal involvement.")).

Plaintiff adequately alleges that Guthertz's actions were motivated by Plaintiff's race. Plaintiff alleges that the District and Guthertz subjected him to adverse employment actions due to his race and ethnic characteristics. (Compl. ¶ 34.)  He also alleges that Guthertz has treated similarly situated non-black employees differently.  (<u>Id.</u>  ¶¶ 33-34.)  Further, Plaintiff alleges that his ethnic and racial characteristics were a motivating factor for Guthertz's actions.  (<u>Id.</u> ¶ 40.)

Plaintiff fails to allege, however, that Guthertz personally participated in any act materially affecting the compensation, terms, conditions, or privileges of Plaintiff's employment at Mission High School.  Most of Guthertz's alleged actions do not rise to the level of adverse employment actions.  Plaintiff alleges that Guthertz treated him with hostility, assigned an inexperienced person to evaluate him, yelled at him, falsely accused him of misconduct, failed to act on his sexual harassment complaint, and prohibited his guitar club from Mission High.  (Compl. ¶¶ 17, 20, 22, 25, 27.)  Plaintiff does not allege, however, that these actions materially affected Plaintiff's terms, conditions, or privileges of employment.

Further, failure to promote Plaintiff and unwarranted negative performance reviews could potentially constitute adverse employment actions, but Plaintiff does not allege that Guthertz participated in such actions.  Plaintiff alleges that "[d]uring the course of his employment, [Plaintiff] has sought to be promoted to an Administrator position within the District, but has yet to be promoted, although he has applied for promotion."  (Compl. ¶ 7; <u>see</u> <u>also</u> <u>id.</u> ¶ 35 (alleging that "as a result of the unlawful actions of the District and Guthertz, [Plaintiff] has been derailed from his promotional track to Administrator, has lost promotional opportunities at Mission and opportunities for employment in other districts . . . ").)  Plaintiff has not alleged how Guthertz hindered Plaintiff's

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    promotion.  Similarly, Plaintiff does not allege that Guthertz gave him any negative performance

2    reviews or that his reviews resulted in serious negative consequences.

3         Plaintiff's allegations that Guthertz placed him in the PAR Program, dismissed him from the

4    program, placed him back in the program, and accelerated the program are also not linked to any

5    negative consequences.  Even assuming that Guthertz had the authority to place Plaintiff into,

6    remove him from, and otherwise control the PAR Program, Plaintiff has not alleged how these

7    actions materially affected the compensation, terms, conditions, and privileges of Plaintiff's

8    employment.  Consequently, the Court dismisses Plaintiff's § 1981 discrimination claim against

9    Guthertz individually without prejudice.

10             2.    Retaliation

11        Defendants also argue that Plaintiff's § 1981 retaliation claim fails because Plaintiff does not

12   allege that Guthertz personally participated in adverse employment actions. Section 1981

13   encompasses retaliation claims, which courts analyze under the Title VII framework.  Schiff v. City

14   & Cnty. of San Francisco, 816 F. Supp. 2d 798, 820 (N.D. Cal.  2011) (Hamilton, J.)  (citing Manatt,

15   339 F.3d at 795, 801).  To state a retaliation case, a plaintiff must allege that: (1) she engaged in a

16   protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link

17   between the protected activity and the adverse employment action.   A plaintiff "has a lower burden

18   to prove adverse employment action on a claim of retaliation compared to a discrimination claim."

19   Doan v. San Ramon Valley Unified Sch. Dist., Case No. 13-3866 CRB, 2013 U.S. Dist. LEXIS

20   158506, at *8-*9 (N.D. Cal. Nov. 4, 2013).  In the retaliation context, "a plaintiff must show that a

21   reasonable employee would have found the challenged action materially adverse, 'which in this

22   context means it well might have dissuaded a reasonable worker from making or supporting a charge

23   of discrimination.'"  Burlington N. & Santa Fe Ry. v. White, 547 U.S. 53, 68 (2006) (quoting

24   Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  Trivial harms and "normally petty

25   slights, minor annoyances, and simple lack of good manners" are not actions that are likely to deter

26   victims of discrimination from complaining.  Burlington, 547 U.S. at 68.  Context matters, however,

27   and adverse actions need not be severe to qualify as adverse employment actions for retaliation

28   purposes.  McAlindin v. Cnty. of San Diego, 192 F.3d 1226, 1239 (9th Cir. 1999).

**United States District Court**
For the Northern District of California

1    Under this standard, Plaintiff's allegations regarding the PAR Program are sufficient to show

2  at this stage that Guthertz personally participated in actions that well might dissuade a reasonable

3  worker from engaging in protected activity.  The PAR Program resulted in Plaintiff being observed

4  and evaluated by coaches, which would not have occurred had he not been placed in the PAR

5  Program.  Moreover, Plaintiff alleges that the evaluators disrupted his classroom.  (Compl. ¶ 31.)

6  While Plaintiff has not sufficiently alleged that the PAR Program materially affected the terms and

7  conditions of his employment, it is reasonable to infer that the threat of being placed in the PAR

8  Program will might dissuade a teacher from engaging in protected activity.   Further, other alleged

9  actions that might not be adverse employment actions in the discrimination context could constitute

10  adverse actions in the retaliation context, for instance, Guthertz's barring Plaintiff's guitar club from

11  Mission High school.

12    Defendants argue that the Court should ignore Plaintiff's allegations about Guthertz's

13  involvement with the PAR Program because the Collective Bargaining Agreement ("CBA")

14  provides that the PAR Panel and Co-Chairs, not Guthertz, decided whether to accept Plaintiff into

15  the PAR Program and how he would proceed within the program.  The Court cannot consider the

16  CBA because it is extrinsic to the complaint.  The CBA is not, as Defendants argue, a document on

17  which the complaint necessarily relies.  See Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998

18  (9th Cir. 2010) (noting that a court may consider a document extrinsic to the complaint if the

19  complaint refers to the document, it is central to the plaintiff's claim, and no party questions the

20  authenticity of the document).  Here, not only does the complaint not mention the CBA, but it is

21  unrelated to Plaintiff's discrimination and retaliation claims.   The Court also cannot take judicial

22  notice of the CBA for the purposes of this motion.  A judicially noticeable fact is one that is either

23  generally known within the trial court's territorial jurisdiction or can accurately and readily be

24  determined from sources whose accuracy cannot reasonably be questioned.  The details of the PAR

25  Program are not general known, and in any event, these details are not the type of facts for which

26  judicial notice can typically be taken.  This is not a situation where the Court is being asked to take

27  judicial notice of a written contract in an action alleging breach thereof.  The general rule is that the

28  Court is limited to the four corners of the complaint on a motion to dismiss.  To take judicial notice

United States District Court
For the Northern District of California

1   of the CBA's description of the PAR Program would stretch the judicial notice exception to this rule

2   too far.

3          The Court finds that Plaintiff has sufficiently alleged retaliation under § 1981 against

4   Guthertz in his individual capacity.  The Court therefore denies Defendants' motion to dismiss as to

5   this claim.

6          D.      Military Discrimination Claims against the District and Guthertz

7          Plaintiff's third claim is for military discrimination in violation of California Military and

8   Veteran's Code § 394.  Plaintiff alleges that Defendants violated § 394(d) by "subjecting [Plaintiff]

9   to anti-military hostility, hostility towards his military service, activities and associations, adverse

10  employment actions because of his military service or duties, activities and associations, and by

11  dissuading him from enlistment in the California National Guard."  (Compl. ¶ 52.)  Defendants

12  move to dismiss this claim because Plaintiff has not alleged facts sufficient to state a claim under the

13  statute and because an Guthertz cannot be liable for discrimination under § 394 for actions, such as

14  those alleged here, that were part of his normal management duties.  Plaintiff brings his claim for

15  military discrimination under California Military and Veterans Code § 394, which provides in

16  relevant part that:

> No employer or officer or agent of any corporation, company, or firm, or other
> person, shall . . .  dissuade, prevent, or stop any person from enlistment or accepting a
> warrant or commission in the California National Guard or Naval Militia by threat or
> injury to him or her in respect to his or her employment, position, status, trade, or
> business because of enlistment or acceptance of a warrant or commission.

20  Cal. Mil. & Vet. Code § 394 (d).

21         As Plaintiff conceded at the hearing on the motion to dismiss, section 394(d) only prohibits

22  dissuading a person from enlisting by threatening him "because of his enlistment."  Plaintiff does

23  not allege that Guthertz or anyone associated with the District knew of his inchoate plans to enlist,

24  nor does Plaintiff allege that he was threatened because of his plans to enlist.  Rather, Plaintiff

25  alleges that his employment was threatened because he spoke with a student about the military.

26  Further, Guthertz cannot be liable individually as a matter of law for acts arising out of his

27  performance of normal management duties.  Haligowski v. Sup. Ct. of Los Angeles Cnty., 200 Cal.

28  App. 4th 983, 986 (Cal. Ct. App. 2011).  The Court therefore dismisses Plaintiff's military

discrimination claims against the District and Guthertz with prejudice.

**III.      Conclusion**

      The Court grants in part and denies in part Defendants' motion to dismiss.  The Court dismisses with prejudice Plaintiff's § 1981 claims against the District and Guthertz in his official capacity and Plaintiff's military discrimination claim against Defendants.  The Court dismisses without prejudice Plaintiff's § 1981 discrimination claim against Guthertz individually.

      **IT IS SO ORDERED.**

Dated: November 25, 2013

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge